IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BRIGITTE BROWN, | § | |
| *Plaintiff,* | § | SA-25-CV-01123-FB |
| vs. | § | |
| PHH MORTGAGE CORPORATION, | § | |
| *Defendant.* | § | |

**REPORT AND RECOMMENDATION AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [#18], Defendant's Motion to Strike Plaintiff's Response to Motion to Dismiss or in the Alternative Motion for Extension of Time to File a Reply Brief in Support of its Motion to Dismiss [#22], and Plaintiff's Motion for Leave to File Sur-Reply to Defendant's Motion to Dismiss [#25]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#6]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the Court will **DISMISS AS MOOT** Defendant's motion to strike and **DENY** Plaintiff's motion for leave to file a sur-reply. It is also recommended that Defendant's motion to dismiss be **GRANTED IN PART** and **DENIED IN PART**, as set forth below.

## I. Background

This case arises out of the scheduled foreclosure sale of property located at 2430 Karat Drive, San Antonio, Texas, 78232 ("the Property"). Plaintiff Brigitte Brown originally filed this action in state court against Defendant PHH Mortgage Corporation, asserting claims for breach of contract and violations of federal, state, and common law. Defendant removed the case to this Court, and Plaintiff filed an Amended Complaint, which is the current live pleading.

Plaintiff's Amended Complaint claims that she originated her mortgage loan in 2005 and since then has been the victim of ongoing predatory lending practices by Defendant that have prevented her from obtaining current status on her loan, despite continued payments. Plaintiff believes Defendant has misapplied funds, inflated loan balances, and continues to report that she is delinquent even though she has repeatedly made settlement payments to bring her account current. Defendant ultimately noticed a foreclosure sale for September 2, 2025, and Plaintiff filed this suit. After removal to federal court, Plaintiff moved for a temporary restraining order to halt the foreclosure, which the Court dismissed as moot after Defendant represented to the Court that it would refrain from taking any steps to foreclose on the Property until after the Court reaches the merits of this case.

The causes of action asserted in Plaintiff's Amended Complaint are violations of the Real Estate Settlement Procedures Act ("RESPA") and Regulation X (Count I), the Truth in Lending Act ("TILA") (Count II), the Fair Debt Collection Practices Act ("FDCPA") (Count III), and the Texas Deceptive Trade Practices Act ("Texas DTPA") (Counts IV and V). After complying with the District Judge's Standing Order on the filing of Rule 12(b)(6) motions, Defendant moved to dismiss Plaintiff's Amended Complaint for failure to state a claim.

## II. Pending Motions Regarding Motion-to-Dismiss Briefing

In response to Defendant's motion to dismiss, Plaintiff filed a response to the motion [#21] that exceeds the page limits set forth in this Court's Local Rules. Defendant moved to strike the filing or in the alternative for an order allowing it a seven-day extension to file its reply. In response, Plaintiff filed an amended response to the motion to dismiss [#23], and Defendant filed a reply [#24]. In light of Plaintiff's amended response, the Court will dismiss as moot Defendant's motion to strike, disregard Plaintiff's original response, and consider only Plaintiff's amended response.

Plaintiff has also filed a motion for leave to file a sur-reply in support of her response in opposition to Defendant's motion to dismiss, arguing that Defendant's reply raised new evidence not referenced in the original motion, specifically an exhibit containing an e-mail from counsel for Defendant regarding the conference requirement under the District Judge's Standing Order. Plaintiff's request to file a sur-reply is denied because Plaintiff did not attach her proposed sur-reply to her motion, as required by this Court's Local Rules. *See* W.D. Tex. Loc. R. CV-7(b) ("When a motion for leave to file a pleading, motion, or other submission is required, an executed copy of the proposed pleading, motion, or other submission shall be filed as an exhibit to the motion for leave."). Further, the undersigned has disregarded the new exhibit attached to Defendant's reply that Plaintiff argues necessitates her filing a sur-reply because it is not material to the resolution of the motion to dismiss and inappropriate to consider at this stage anyway, when the Court is limited to the pleadings and documents referenced by the pleadings. There is therefore no reason to grant leave to file a sur-reply.

## III. Legal Standard for Motion to Dismiss

Defendant moves for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted). However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief. *See Twombly*, 550 U.S. at 570.

Generally, in deciding a motion to dismiss, a court may not look beyond the four corners of the plaintiff's pleadings without converting the motion to a motion for summary judgment. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999); Fed. R. Civ. P. 12(d).

However, a court may consider "documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court may also consider those documents of which the Court may take judicial notice. *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018). Moreover, it is the practice in this Circuit to consider a document attached to a response to a motion to dismiss when that document is sufficiently referenced in the complaint and its authenticity is without question. *Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 293–94 (5th Cir. 2008).

Plaintiff attaches over one hundred pages of exhibits to her Amended Complaint. The Court may consider these documents as part of the pleadings without converting Defendant's motion to dismiss into a motion for summary judgment. *Indest*, 164 F.3d at 261. These include the Notice of September 2, 2025 Trustee Sale ([#12], at 37–39), a September 5, 2025 Letter from Defendant to Plaintiff regarding her request to postpone the foreclosure sale ([#12], at 45–46), a September 15, 2025 Letter from Defendant to Plaintiff approving a trial modification plan ([#12], at 51–54), and various charts Plaintiff has created regarding her alleged damages, logs of calls she allegedly made to Defendant, and news articles about and pleadings from other lawsuits against Defendant. The undersigned has considered those attachments insofar as they pertain to Plaintiff's claims.

Defendant has also attached six exhibits to its motion to dismiss comprising over 75 pages. Again, although the Court may consider documents attached to a motion to dismiss, those documents must be central to the plaintiff's claim and referenced by the plaintiff in the operative pleading or documents of which the Court may take judicial notice. *Lone Star Fund*, 594 F.3d at

387; *Innova Hosp.*, 892 F.3d at 726. Defendant asks the Court to take judicial notice of the Deed of Trust [#18-1] and Assignment of Deed of Trust [#18-2] in evaluating the motion to dismiss, as these documents were recorded in the Official Public Records of Bexar County, Texas, as Doc. Nos. 20050147343 and 2011000779. The Court is permitted to do so, and the undersigned has considered these documents. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

Defendants also ask the Court to consider various loan modification agreements it claims were executed by Plaintiff throughout the course of her loan [#18-3, #18-4, #18-5, #18-6]. The allegations in Plaintiff's Amended Complaint center on what she believes were a series of coercive modification agreements and proposed modifications. Plaintiff claims that Defendant has engaged in a pattern of offering modifications, denying or canceling them under false pretenses, and using foreclosure threats to coerce Plaintiff into new agreements that are predatory and have kept her in a constant state of financial vulnerability. (Am. Compl. [#12], at ¶¶ 12B, 12D.) The September 5, 2025 letter from Defendant attached to Plaintiff's pleading also references various modifications. (Sept. 5, 2025 Ltr. [#12], at 45–46.) However, not all the loan modification agreements attached to Defendant's motion to dismiss are referenced in Plaintiff's pleading or the September 5, 2025 letter. Defendant asks the Court, for example, to consider a 2011 loan modification agreement executed between Plaintiff and GMAC Mortgage, LLC, an entity not a party to this suit. (2011 Agreement [#18-3], at 2–9.) This agreement is not referenced anywhere in Plaintiff's pleadings and therefore cannot be considered at this stage in the proceedings.

The other modification agreements are from March and June 2025 and are what Defendant refers to as a "Corrected Agreement" and "Cancelled Agreement." (2025 Agreements [#18-4], at 1–21; [#18-5], at 1–12.) Defendant also asks the Court to consider a letter from

Defendant to Plaintiff dated July 18, 2025, which denies a request for mortgage assistance. (July 2025 Ltr. [#18-6], at 1–7.) Defendant asserts that the Court should consider these documents because they are referenced by Defendant in its September 5, 2025 letter to Plaintiff, which Plaintiff attaches to her pleading. Defendant argues that Rule 106 of the Federal Rules of Evidence, which partially codifies the common-law evidentiary rule of "completeness," requires the Court to consider the agreements referenced in the letter because Plaintiff attached the letter itself but failed to include the letter's attachments in her pleading. *See* Fed. R. Evid. 106 (providing that if a party introduces "all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time"); *see also Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988). But this is a rule of *evidence*, not a rule governing what constitutes a pleading for purposes of ruling on a motion to dismiss. This rule therefore cannot be used as a basis for expanding the pleadings beyond what is contained in Plaintiff's Amended Complaint and the attachments thereto.

The Court also declines to consider these documents because they are not clearly referenced in Plaintiff's pleadings or are expressly disputed by Plaintiff. A comparison of Defendant's documents to the allegations in Plaintiff's Amended Complaint (supplemented by the attachments thereto) highlight the factual disputes between the parties regarding which agreements were properly executed and properly withdrawn or rescinded. For example, Plaintiff asserts in her pleading that she was never informed of the March 2025 "corrected" modification agreement. (Am. Compl. [#12], at ¶ 23.) The "canceled" agreement appears to have been mailed to Plaintiff in February 2025, and Plaintiff alleges she executed a loan modification agreement that month. (*Id.* at ¶ 22.) But Plaintiff's allegations regarding the modified monthly

payment amount differ from the terms of the loan agreement referenced by Defendant. Plaintiff claims she complied fully with this agreement and made all required trial payments by telephone, but Defendant improperly rescinded the agreement. (*Id.*) Defendant asserts the terms of the "corrected" agreement were more favorable to Plaintiff than the terms of the "canceled" agreement she executed.

In short, Plaintiff's pleadings convey that there is ambiguity about which proposed modification agreements were executed and ever in effect and whether any were canceled. Although Defendant attempts to clarify these ambiguities in its motion to dismiss, it has not adequately done so and essentially invites the Court to go beyond the pleadings. This record is better addressed in a summary judgment posture, when the documents can be accompanied by sworn testimony and declarations. The Court therefore does not accept as true the representations of Defendant regarding these agreements, as stated in the September 5, 2025 letter, but at this stage, assumes only that Defendant sent such a letter in which it took certain positions regarding the various loan modifications at issue.

Finally, the undersigned has disregarded the over 60 pages of exhibits attached to Plaintiff's amended response, which invites the Court even further outside the bounds of the materials that are proper for the Court to consider in resolving this motion to dismiss. In drafting this report and recommendation, the undersigned's analysis is based solely on the allegations in Plaintiff's Amended Complaint plus the relevant exhibits attached to the pleading by Plaintiff and the two exhibits attached to Defendant's motion to dismiss of which the Court is permitted to

take judicial notice—the Deed of Trust and Assignment. All other documents submitted by the parties have been excluded from consideration.[1]

**IV. Facts Based on Live Pleading & Attachments That May Be Considered**

Plaintiff's Amended Complaint and the documents properly considered by the Court alongside the pleading establish the following facts for purposes of resolving the motion to dismiss. Plaintiff executed a Note in favor of Home Loan Corporation d/b/a Expanded Mortgage Credit ("HLC") in June 2005, in exchange for a loan in the principal amount of $192,000.00. (Am. Compl. [#18], at ¶ 10; Deed of Trust [#18-1], at 2–3.) On June 16, 2005, Plaintiff also executed a Deed of Trust as security for the Note on the Property in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee of HLC. (Deed of Trust [#18-1], at 3–4.) On January 5, 2011, MERS assigned its rights in the Deed of Trust to U.S. Bank National Association, as Trustee. (Assignment [#18-2], at 2–3.) Plaintiff alleges the servicing of Plaintiff's loan was at some point transferred to Defendant but does not specify the date. (Am. Compl. [#18], at ¶ 10.)

Plaintiff alleges that in 2008, after only three years of home ownership, she owed a large balloon payment on the Loan, and when she defaulted, Defendant initiated foreclosure proceedings. (*Id.* at ¶ 12A.) Plaintiff claims she attempted to comply with a modification agreement offered by Defendant by sending a certified check, but Defendant falsely claimed it was never received, denied the modification, and continued with foreclosure proceedings. (*Id.* at

---

[1] Again, if the undersigned had not excluded these other materials from consideration, the motion to dismiss would have to be converted to a motion for summary judgment. *See* Fed. R. Civ. P. 12 (d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

¶ 12B.) Plaintiff claims she was then forced into a HARP modification[2] under duress in order to save her home. (*Id.*) Plaintiff's pleading does not reference the year in which she entered this alleged modification.

Plaintiff alleges that she subsequently lost her homeowner's insurance in December 2021, after she went through a divorce. (*Id.* at ¶ 16.) In February 2022, Defendant allegedly forced Plaintiff to obtain hazard insurance on the Property through a company called Poppo & Poppo Properties without her consent. (*Id.* at ¶¶ 14, 16.) Plaintiff claims Defendant began charging her for coverage under the policy at an inflated rate without disclosing the policy rate and that these inflated rates contributed to her default status. (*Id.*) Plaintiff also alleges she at some point acquired a second mortgage and an additional monthly payment of $420 per month, although her pleadings do not specify the lender. (*Id.* at ¶ 12D.) According to Plaintiff, in 2023, this second mortgage "ballooned" and triggered additional foreclosure proceedings. (*Id.*)

According to Defendant's September 2025 letter, in early 2025, Defendant approved Plaintiff for a permanent modification of her loan and mailed a modification agreement to Plaintiff's address on February 19, 2025. (Sept. 2025 Ltr. [#12], at 45.) Plaintiff claims she executed and complied with this agreement by making all three required trial payments by telephone. (Am. Compl. [#12], at ¶ 22.) However, Defendant unilaterally canceled this agreement, claiming the modification offer was incorrect and was being reviewed for a new final

---

[2] The Home Affordable Refinance Program ("HARP") was a program run by the Federal Housing Agency designed to help borrowers with high loan-to-value mortgages, i.e., those with little to no—or even negative—equity in their homes. *Vasquez v. Bank of Am., N.A.*, No. CV B-17-42, 2017 WL 7371195, at *6 (S.D. Tex. Dec. 15, 2017), *report and recommendation adopted*, No. CV B-17-042, 2018 WL 722636 (S.D. Tex. Feb. 5, 2018). These borrowers could refinance their mortgages at lower interest rates and decrease their monthly payments. *Id.* The Home Affordable Modification Program ("HAMP") was a government program in which participating mortgage servicers determine whether mortgagors are eligible for a permanent loan modification. *Montalvo v. Bank of Am. Corp.*, 864 F. Supp. 2d 567, 575 (W.D. Tex. 2012). It is unclear from the pleadings which program Plaintiff participated in.

modification agreement. (*Id.*; Sept. 2025 Ltr. [#12], at 45.) Plaintiff alleges she was never informed by any representative of Defendant that her executed modification agreement had been canceled and she further contends that Defendant continued to accept her payments even as it was reporting her delinquent. (Am. Compl. [#12], at ¶ 24.) Defendant's September 2025 letter acknowledges that Plaintiff communicated with a representative of Defendant by phone on February 28, 2025, and the representative did not realize the offer had been canceled and emailed the agreement to Plaintiff for her to return by March 3, 2025. (Sept. 2025 Ltr. [#12], at 45.)

Defendant's September 2025 letter also states that Defendant sent a corrected modification agreement to Plaintiff to her address of record and requested that this corrected modification agreement be returned by March 22, 2025. (*Id.*) According to the letter, Plaintiff never returned the corrected modification agreement to Defendant, so on July 18, 2025, a denial notice was sent to Plaintiff at her address of record stating that she had failed to return the final modification agreement within the required timeframe. (*Id.*) Plaintiff alleges she never received this proposed agreement. (Am. Compl. [#12], at ¶¶ 23–24.) Plaintiff contends this resulted in the referral of Plaintiff's account to foreclosure on July 25, 2025, and a foreclosure sale being scheduled for September 2, 2025. (Sept. 2025 Ltr. [#12], at 45.)

In an attempt to avoid foreclosure, Plaintiff obtained $10,000 from her father to make a payment on the Loan. (Am. Compl. [#12], at ¶ 25.) According to Plaintiff, Defendant refused to accept the payment and proceeded toward foreclosure. (*Id.*) Plaintiff alleges that Defendant presented her with another proposed modification agreement that included another required balloon payment that put her in an impossible financial position. (*Id.* at ¶ 26.) Attached to Plaintiff's pleading is a new "Loss Mitigation Notice" offering a trial payment plan of $2,154.28 to avoid foreclosure, dated September 15, 2025. (*Id.* at ¶ 28; September 2025 Loan Modification

Offer [#12], at 51–54.) It is unclear whether this was the same proposed modification agreement Plaintiff refers to her in Paragraph 26 of her Amended Complaint or another loan modification proposed by Defendant. Plaintiff does not allege that she executed either. Plaintiff then filed this action on August 22, 2025.

## V. Analysis of Motion to Dismiss

Defendant moves for the dismissal of all of Plaintiff's claims for failure to state a claim. The Court should grant the motion to dismiss as to Plaintiff's Texas DTPA claim but deny the motion as to Plaintiff's claims under RESPA, TILA, and the FDCPA.

### A. RESPA and Regulation X

Plaintiff alleges that Defendant violated RESPA and Regulation X by failing to properly apply Plaintiff's payments; falsely reporting her as delinquent despite ongoing payments; engaging in "dual tracking" by initiating foreclosure proceedings while her loss mitigation agreements were pending; failing to provide her with a clear accounting of her loan history and payoff figures; unilaterally canceling an executed modification agreement in February 2025; repeatedly sending conflicting and contradictory modification offers; and improperly forcing hazard insurance on Plaintiff without providing clear, timely, and accurate notices. (Am. Compl. [#12], at ¶ 39.)

RESPA was enacted to protect consumers from abusive mortgage practices. 12 U.S.C. § 2601. Regulation X was issued by the Bureau of Consumer Financial Protection to implement RESPA. *See* 12 C.F.R. § 1024.1. Regulation X expressly prohibits the practice of "dual tracking," which occurs when a lender "actively pursues foreclosure while simultaneously considering the borrower for loss mitigation options." *Gresham v. Wells Fargo Bank, N.A.*, 642 F. App'x 355, 359 (5th Cir. 2016); *see also* 12 C.F.R. 1024.41(g). Regulation X also expressly

provides for a private right of action in the event that the lender violates this provision. 12 C.F.R. § 1024.41(a). However, the cause of action only applies "to a borrower's first loss mitigation application." *Wentzell v. JPMorgan Chase Bank, Nat'l Ass'n*, 627 F. App'x. 314, 318 n.4 (5th Cir. 2015). In other words, RESPA only requires that a servicer complete a single loss mitigation procedure for a borrower before pursuing foreclosure. *See* 12 C.F.R. § 1024.41(i) ("A servicer must comply with the requirements of this section for a borrower's loss mitigation application, unless the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application.").

Defendant argues Plaintiff cannot prevail on a RESPA claim based on allegations of dual tracking because her 2025 loan modification was not her first modification agreement. Defendant directs the Court to a 2011 Loan Modification to defeat this claim. Yet, this modification agreement is not referenced in Plaintiff's pleading and has been disregarded by the Court. (*See supra* at 6.) It therefore cannot be the basis for dismissal of Plaintiff's dual tracking claim. Defendant also directs the Court to a purported corrected loan modification that it contends was sent to Plaintiff on March 4, 2025. The undersigned has also disregarded this loan modification agreement. (*See id.*) As noted above, there are significant factual disputes regarding when and if various loan modification agreements were executed or rescinded. Thus, Plaintiff's pleadings do not foreclose a dual tracking claim. Whether Plaintiff and Defendant properly executed a loan modification prior to the 2025 modifications immediately preceding the noticed foreclosure sale is a disputed fact to be resolved on an evidentiary record.

Defendant next argues that Plaintiff's RESPA claim fails because she does not allege she submitted a complete loss mitigation application more than 37 days before the foreclosure sale.

*See* 12 C.F.R. § 1024.41(c)(1) ("If a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving the complete loss mitigation application, a servicer shall: (i) Evaluate the borrower for all loss mitigation options available to the borrower; and (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage."). Defendant claims that nowhere in Plaintiff's pleading does she clearly allege that she submitted a complete loan modification application to Defendant. Yet, viewing Plaintiff's allegations in her favor, Plaintiff's Amended Complaint and the September 2025 letter from Defendant attached to her Complaint taken together plead that Defendant approved Plaintiff for a modification of her loan in February 2025 and that Plaintiff signed that agreement, but that it was later rescinded without timely notice to Plaintiff. (Sept. 2025 Ltr. [#12], at 45.) Whether Plaintiff submitted a complete loan modification agreement more than 37 days prior to the scheduled foreclosure is also a matter to be determined on a more complete evidentiary record.

One of the other provisions of RESPA cited by Plaintiff in her pleading is 12 C.F.R. § 1024.37. (Am. Compl. [#12], at ¶ 39h.) This provision concerns "force-placed insurance," which is defined as "hazard insurance obtained by a servicer on behalf of the owner or assigned of a mortgage loan that insures the property securing such loan." 12 C.F.R. § 1024.37(a). "A servicer may not assess on a borrower a premium charge or fee related to force-placed insurance unless the servicer has a reasonable basis to believe that the borrower has failed to comply with the mortgage loan contract's requirement to maintain hazard insurance." *Id.* § 1024.37(b). Written notice consisting of specific requirements is also required *before* a lender is permitted to charge a borrower for force-placed insurance. *Id.* § 1024.37(c). The servicer must deliver

written notice at least 45 days before any charge or fee is assessed; a second reminder notice is required 15 days before any such assessment. *Id.* §§ 1024.37(c), (d). Additionally, RESPA establishes substantive limitations on force-placed insurance charges that may be passed on to borrowers, stating that: "All charges, apart from charges subject to State regulation as the business of insurance, related to force-placed insurance imposed on the borrower by or through the servicer shall be bona fide and reasonable." 12 U.S.C. § 2605(m).

Defendant argues that Plaintiff's RESPA claim in connection with force-placed insurance fails because her pleading admits that she lost her homeowner's insurance in December 2021 and received the written notice required under the statute. But Plaintiff's Amended Complaint merely alleges that her homeowner's insurance lapsed in late 2021 and that she received written notice stating that she could mail proof of her own replacement insurance and that Defendant would cancel its coverage once her substitute insurance was verified. (Am. Compl. [#12], at ¶¶ 14, 16.) These allegations suggest that the written notice she received was provided *after* the cost of a force-placed insurance policy had already been imposed. Plaintiff's response is consistent with this interpretation, as she repeatedly asserts that she did not receive advance notice of the cost of the force-placed insurance policy. (Resp. [#23], at 2.) This Court is required to liberally construe the allegations in Plaintiff's pleading in her favor, as she is a *pro se* litigant. *Collins v. Dallas Leadership Found.*, 77 F.4th 327, 330 (5th Cir. 2023). Plaintiff's pleadings, liberally construed, allege she did not timely receive these notices. (Am. Resp. [#23], at 2, 10, 12, 17.) Plaintiff's allegations therefore do not foreclose a cause of action based on the written notice requirements of RESPA and Regulation X.[3]

[3] There may be other reasons this claim fails, however. Plaintiff alleges that Defendant first applied force-placed insurance charges on her account in February 2022, just two months after she lost her insurance in December 2021. (Am. Compl. [#12], at ¶ 14.) The statute of

Finally, Defendant argues that Plaintiff's RESPA claim fails because she does not identify any specific damages caused by the alleged violation. *See* 12 U.S.C. § 2605(f)(1)(A). A plaintiff must allege actual damages resulting from a violation of RESPA. *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 768 (N.D. Tex. 2012). But this is not a basis to dismiss this claim at this stage either. Plaintiff has alleged that the unlawful imposition of force-placed insurance and the assessment of inflated premiums has contributed to her inability to make her monthly payments, which led to the attempted foreclosure sale. These allegations are sufficient to survive Defendant's motion to dismiss. *See, e.g.*, *Graham v. PHH Mortg. Corp.*, No. 25CV432, 2026 WL 899427, at *9 (E.D. Pa. Mar. 30, 2026) (rejecting dismissal of RESPA claim based on a failure to allege damages where "the alleged violation [was] the unlawful imposition of force-placed insurance and the assessment of premiums" because the plaintiff alleged that "[b]y assessing premiums without satisfying these statutory prerequisites, Defendants caused [the] mortgage account to be treated as in default, manufactured an escrow shortage, and triggered a substantial and unwarranted increase in her monthly mortgage payment"). Like the plaintiff in *Graham*, Plaintiff has alleged that the increased premiums

---

limitations for RESPA claims is three years. 12 U.S.C. § 2614. This claim may ultimately be barred by the statute of limitations, as this case was not filed until August 2025, more than three years after the imposition of force-placed insurance charges on her account.

Additionally, the Deed of Trust expressly provides that if Plaintiff fails to maintain insurance, the lender may obtain insurance coverage at Plaintiff's expense. (Deed of Trust [#18-1], at § 5.) Under the terms of the Deed of Trust, the lender is not required to purchase any particular type or amount of coverage, and Plaintiff acknowledged that "the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that [Plaintiff] could have obtained." (*Id.*) Defendant cites the Deed of Trust as a basis for dismissal of Plaintiff's RESPA claim based on force-based insurance, but Defendant has not adequately briefed the Court on whether this contractual provision can override the statutory and regulatory protections imposed by RESPA. At this stage of the proceedings, it is therefore not a basis for dismissal of Plaintiff's RESPA claim based on force-placed insurance.

themselves caused her damages. In sum, Defendant has not provided the Court with any basis for dismissal of Plaintiff's claims under RESPA at this stage of the proceedings.

**B. TILA and Regulation Z**

Plaintiff alleges that Defendant violated TILA and its implementing Regulation Z by failing to clearly and accurately disclose the terms of her mortgage, specifically a ballon payment in its September 2025 loan modification and the charges associated with the force-placed insurance policy. (Am. Compl. [#12], at ¶¶ 48–54.) Plaintiff further alleges that Defendant repeatedly issued contradictory modification offers without reconciling which proposed agreement was still before her to consider, thereby concealing the true terms of repayment, and did not provide her with accurate statements showing how a $23,000 Texas Homeowners Assistance Fund payment was credited to her account. (*Id.* at ¶ 52.)

Congress enacted TILA to "assure a meaningful disclosure of credit terms" and "to protect the consumer against inaccurate and unfair credit billing . . . practices." 15 U.S.C. § 1601(a). Congress delegated to the Federal Reserve Board the power to implement and enforce TILA. *Id.* § 1604. Plaintiff's Amended Complaint references Section 1638, Section 1639, and Regulation Z of TILA. (Am. Compl. [#12], at ¶ 50.) Section 1638 of TILA requires mortgage lenders and/or servicers to send their mortgagees a statement once per billing cycle updating them on specified items, such as the amount of the principal obligation under the mortgage; interest rate in effect; and the date on which the interest rate may rest or adjust. 15 U.S.C. § 1638(f)(1). Section 1639 of TILA addresses additional disclosure requirements for "high-cost mortgages" and expressly prohibits such mortgages from containing "balloon payments," defined as a "scheduled payment that is more than twice as large as the average of earlier scheduled payments." *Id.* §§ 1639(a), (e). The Federal Reserve Board has also promulgated

specific disclosure requirements governing credit transactions under TILA in Regulation Z. 12 C.F.R. § 226.1; *Billings v. Propel Fin. Servs., L.L.C.*, 821 F.3d 608, 609–10 (5th Cir. 2016).

Defendant makes several arguments in favor of dismissal of Plaintiff's TILA claims. None are persuasive under governing pleading standards and the case's current procedural posture. First, Defendant argues that Plaintiff's TILA claims fail because TILA does not give rise to liability for mortgage servicers. Defendant has not established this is a basis for dismissal. The language of TILA states that liability exists for "any creditor who fails to comply with any requirement imposed under this part." 15 U.S.C. § 1640(a). TILA defines a "creditor" as the following:

> a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

*Id.* § 1602(g).

Defendant directs the Court to several unpublished district court cases dismissing claims under TILA against loan servicers where the servicer was not the originating lender. *See Anderson v. Wells Fargo Bank, N.A.*, No. 3:16-CV-2514-N, 2018 WL 3426269, at *12 (N.D. Tex. July 13, 2018); *Mercado v. Midland Mortg.*, No. 3:19-CV-1940-K-BN, 2020 WL 2331294, at *5 (N.D. Tex. May 11, 2020). However, TILA also provides liability for assignees of a creditor where the TILA violation "is apparent on the face of the disclosure statement," i.e., where a disclosure is "incomplete or inaccurate." 15 U.S.C. § 1641(a). This section of TILA also expressly addresses servicers of a consumer obligation, such as mortgage servicers, and provides that they can be treated as an assignee of such obligations and held liable where they

are functioning as both servicer and owner of the obligation. *Id.* § 1641(f). Plaintiff alleges that Defendant is both an assignee and servicer of her loan. (Am. Compl. [#12], at ¶ 48.) No document incorporated by reference into Plaintiff's pleading properly considered by the Court on a motion to dismiss contradicts this allegation or addresses whether Defendant ever owned the loan, was an assignee of the loan, or functioned only as a third-party mortgage servicer. Accordingly, the Court should not dismiss the TILA claims on this basis.

Second, Defendant argues Plaintiff lacks standing to bring a claim under TILA because she fails to allege any concrete harm caused by Defendant because a foreclosure sale has not yet occurred. As with Defendant's argument with regard to Plaintiff's claim arising under RESPA, the Court should reject this argument. TILA provides for the recovery of both actual and statutory damages for violations of TILA's disclosure requirements. 15 U.S.C. § 1640(a). TILA plaintiffs "need not show that they sustained actual damages stemming from the TILA violations proved before they may recover the statutory damages the Act also provides for. The statutory damages are explicitly a bonus for the plaintiff, designed to encourage private enforcement of the Act, and a penalty against the defendant, designed to deter future violations." *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 185–86 (S.D. Tex. 2007), *aff'd*, 269 F. App'x 523 (5th Cir. 2008) (quoting *Dryden v. Lou Budke's Arrow Finance Co.*, 630 F.2d 641, 647 (8th Cir. 1980)). Moreover, Plaintiff has articulated a theory of actual harm beyond any right to statutory damages: financial loss from misapplied payments, unilateral cancellations and modifications, and improper force-placed insurance, all of which she contends contributed to her ongoing default status.

Third, Defendant argues Plaintiff cannot base a TILA claim on allegations related to force-placed insurance because these are not finance charges that are subject to TILA's

disclosure requirements. *See* 12 C.F.R. § 226.18 (requiring disclosure of "finance charge"). Regulation Z provides that insurance premiums may be excluded from "the finance charge" subject to disclosure under certain conditions. *Id.* § 1026.4(d)(2). The Fifth Circuit has explained that TILA therefore can impose disclosure requirements with respect to force-placed insurance premiums where these conditions are not met. *Reneau v. Mossy Motors*, 622 F.2d 192, 194–95 (5th Cir. 1980) (finding district court did not err in finding violation of TILA and Regulation Z where there was no disclosure of the term of force-placed insurance and charges therefore did not fall under exclusion from finance charge). Moreover, several federal courts have denied motions seeking dismissal of a TILA claim where the claim was predicated on allegedly unauthorized force-placed insurance, viewing the charges as a new credit transaction requiring disclosures under TILA. *See, e.g.*, *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 163 F.3d 948, 951 n.1 (6th Cir. 1998); *Travis v. Boulevard Bank N.A.*, 880 F. Supp. 1226, 1229 (N.D. Ill. 1995); *see also Morris v. Wells Fargo Bank N.A.*, No. 2:11CV474, 2012 WL 3929805, at *13 (W.D. Pa. Sept. 7, 2012) (collecting cases). Defendant has not provided the Court with adequate authority regarding its argument that force-placed insurance premiums cannot constitute finance charges that must be disclosed under the TILA.

However, Defendant also argues that any TILA claim based on events occurring before October 1, 2024, is barred by the governing one-year statute of limitations, as Plaintiff did not plead a TILA claim until the filing of her Amended Complaint on October 1, 2025. 15 U.S.C. § 1640(e). Any TILA claim based on the initial placement of force-placed insurance charges in 2022 would be barred by limitations. But Plaintiff asserts other bases for her TILA claim, such as the failure to disclose a balloon payment, which arise out loan modifications from 2025. Defendant has not established that all of Plaintiff's TILA claims are barred by limitations.

Fourth, Defendant argues that Plaintiff cannot base a TILA claim on disclosure violations in her monthly mortgage statements and directs the Court to mortgage statements attached to Plaintiff's response in opposition to Defendant's motion to dismiss as evidence that Defendant fully complied with TILA and Regulation Z. As noted *supra* at page 8, the undersigned has not considered this evidence attached to Plaintiff's response, and it is not proper for the Court to make a factual determination based on excluded evidence regarding TILA compliance in the context of the motion to dismiss.

In sum, the Court is required to accept Plaintiff's allegations as true on a motion to dismiss, and she alleges that Defendant has misapplied funds, failed to provide accurate accounting on her monthly mortgage statements, and failed to adequately disclose all charges, including balloon payments, in a means decipherable to a reasonable consumer. The Court should find these allegations adequate to state a claim under TILA's disclosure requirements and to survive a Rule 12(b)(6) motion to dismiss.

**C. FDCPA**

Plaintiff alleges that Defendant is liable under the FDCPA by making false and misleading representations and engaging in unfair and unconscionable practices with respect to her mortgage. The FDCPA prohibits debt collectors from using false, deceptive, or misleading representations, and from engaging in unfair or unconscionable means to collect a debt. 15 U.S.C. §§ 1692e, 1692f.

Defendant argues Plaintiff cannot plead a plausible claim under the FDCPA because it is not a "debt collector" potentially subject to liability under the statute. In this Circuit, mortgage lenders, mortgage servicing companies, and assignees of a debt that is not in default at the time of the assignment are "creditors," not "debt collectors," within the meaning of the FDCPA. *See*

*Montgomery v. Wells Fargo Bank, N.A.*, 459 Fed. App'x 424, 428 n.1 (5th Cir. 2012); *see also Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (noting that the legislative history of the act indicates that a "debt collector" does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned). If the debt was already in default when it was assigned to Defendant, Defendant could however be liable under the FDCPA. *Castrillo v. Am. Home Mortg. Servicing, Inc.*, 670 F. Supp. 2d 516, 524 (E.D. La. 2009).

Defendant argues that the 2011 Loan Modification shows that Plaintiff cured her default on the loan in March 2011 and that Plaintiff alleges Defendant became the loan servicer years later. Assuming Plaintiff's allegations are true, Defendant asserts that at the time the loan began being serviced by Defendant, it was not in default. Yet, the 2011 Loan Modification is not properly before the Court. In any event, the undersigned does not read Plaintiff's pleading in this manner. Plaintiff's Amended Complaint instead alleges that she first missed payments and was placed in default in 2008, three years after her loan was initiated. (Am. Compl. [#12], at ¶ 12A.) Plaintiff repeatedly refers to "Defendant" as the party who initiated foreclosure proceedings in 2008 and with whom she attempted to cure her default at that time. (*Id.*) There is nothing in Plaintiff's Amended Complaint alleging ***when*** Defendant became her mortgage servicer that forecloses the possibility that the debt was already in default when it was assigned to Defendant.

Secondly, Defendant argues Plaintiff has not identified any act or omission in her pleadings that constitutes prohibited "debt collection" under the FDCPA because non-judicial foreclosure is not debt-collection activity. Yet monthly mortgage statements can plausibly constitute communications in "connection with the collection of a debt" under the FDCPA if (a) they contain "this is an attempt to collect a debt" language, (b) they request or demand payment

of a certain amount by a certain date, (c) they provide for a late fee if the payment is not made on time, and (d) the history between the parties suggests that the statement is an attempt to collect on a disputed debt. *See Daniels v. Select Portfolio Servicing, Inc.*, 34 F.4th 1260, 1271 (11th Cir. 2022) (quotation omitted). The September 5, 2025 letter from Defendant incorporated into Plaintiff's pleading states that it is "from a debt collector attempting to collect a debt." (Sept. 2025 Ltr. [#12], at 45–46.) In short, Plaintiff's allegations go beyond mere conclusory statements that Defendant is a debt collector. The Court should find that Plaintiff's pleadings, construed liberally and in her favor, state a plausible claim under the FDCPA.

**D. Texas DTPA**

Finally, Plaintiff alleges Defendant is liable under the Texas DTPA for engaging in false and misleading practices and unconscionable conduct in violation of Tex. Bus. & Com. Code § 17.41, *et seq.* Defendant argues this claim must be dismissed because Plaintiff is not a consumer under the DTPA. The undersigned agrees.

To prevail on a DTPA claim, a Plaintiff must qualify as a "consumer," meaning in part that "the goods or services sought or acquired must form the basis of the party's complaint." *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 159 (Tex. App.—Fort Worth 2007, pet. denied). A mortgagor challenging how an existing mortgage is serviced is not a consumer under the DTPA because the basis of the claim is the subsequent loan servicing activities and not any goods or services acquired in the original transaction. *See Rojas v. Wells Fargo Bank, N.A.*, 571 F. App'x 274, 279 (5th Cir. 2014). Because the transactions Plaintiff complains of concern Defendant's servicing of the loan, as opposed to Plaintiff's purchase of property in 2005, Plaintiff is not a consumer for the purposes of the DTPA. *See Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 725 (5th Cir. 2013). Accordingly, Plaintiff's Texas DTPA claim should be dismissed.

## VI. Conclusion and Recommendation

Having considered the parties' motions, the responses and replies thereto, the live pleading and attachments incorporated in the pleading or of which the Court may take judicial notice, and the governing law,

**IT IS HEREBY ORDERED** that Defendant's Motion to Strike Plaintiff's Response to Motion to Dismiss or in the Alternative Motion for Extension of Time to File a Reply Brief in Support of its Motion to Dismiss [#22] is **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Sur-Reply to Defendant's Motion to Dismiss [#25] is **DENIED**.

The undersigned also **RECOMMENDS** that Defendant's Motion to dismiss Plaintiffs' First Amended Complaint [#18] be **GRANTED IN PART** as to her Texas DTPA claim but **DENIED IN PART** as to her claims under RESPA, TILA, and the FDCPA.

## VII. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this Report and Recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this deadline is modified by the Court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the presiding District Judge's standing orders or other Court order. *See* W.D. Tex. Local Rule CV-7. The objecting party shall file the objections with the Clerk of the Court and serve the objections on all other parties.

A party is entitled to a *de novo* review by the District Judge of the findings and conclusions contained in this Report and Recommendation, only if specific objections are made. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the default time to file objections from 10 to 14 days). An objecting party must therefore specifically identify those findings, conclusions, or recommendations to which objections are made, as well as the basis for all such objections; the District Judge need not consider frivolous, conclusory, or general objections. *Id*. Failure to timely file written, specific objections to any proposed findings, conclusions, or recommendations contained in this Report and Recommendation will bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the District Judge, except on grounds of plain error, given that the party is here provided notice that such consequences will result from a failure to object. *See* 28 U.S.C. § 636(b)(1)(C); *Douglass*, 79 F.3d at 1417. Finally, facts or legal arguments raised for the first time in objections to a Magistrate Judge's findings, conclusions, and recommendations are "not properly before the district court." *United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992); *see also Shambaugh & Son, L.P. v. Steadfast Ins. Co*., 91 F.4th 364, 369 (5th Cir. 2024) ("[The Fifth Circuit] considers arguments forfeited if they are not raised before a magistrate judge, even if they are subsequently raised before the reviewing district [judge] in objections to the magistrate judge's report and recommendation.").

SIGNED this 27th day of August, 2026.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE